## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**LAWRENCE E. BLACKHURST, JR.,**

and

**CAROL A. BLACKHURST**,

      Plaintiffs,

  v.

**NEWREZ LLC**
d/b/a SHELLPOINT MORTGAGE SERVICING,

and

**SN SERVICING CORPORATION**,

      Defendants.

**CASE NO.**

**JUDGE**

**COMPLAINT FOR DAMAGES**

**TRIAL BY JURY DEMANDED**

_____

Plaintiffs Lawrence E. Blackhurst, Jr. and Carol A. Blackhurst ("Plaintiffs"), through counsel, for their Complaint against Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and SN Servicing Corporation ("SN Servicing") (collectively, "Defendants"), state:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are the owners of residential real property, located at and commonly known as 8525 Forest Run Ln., Orlando, FL 32836 (the "Home"), which they have occupied as their primary, principal residence for all times relevant to the Complaint.

2. Shellpoint is the servicer of a note executed by Plaintiffs (the "Note") and of a mortgage on the Home that secures said note (the "Mortgage") (collectively, the "Loan").

Shellpoint has been the servicer of the Loan since January 25, 2019. The Loan is attached as **Exhibit 1**.

3.      SN Servicing was the prior servicer of the Loan from June 11, 2018 to January 25, 2019.

4.      The owner of the Loan is non-party Metropolitan Insurance Company ("Metropolitan").

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

6.      This Court has supplemental jurisdiction to hear all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

7.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

8.      This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

9.      In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10.      Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

11.     Mortgage servicers cannot "obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance" 12 U.S.C. § 2605(k)(1)(A).

12.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

13.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

14.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

15.     Plaintiffs assert claims for relief against Defendants for violations of the specific rules under Regulation X, as set forth, *infra*.

16.     Plaintiffs have a private right action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

17.     Plaintiffs also assert a common law claim for breach of contract against SN Servicing.

## **FACTUAL BACKGROUND**

18.     On August 29, 2006, Plaintiffs obtained the Loan from non-party American Brokers Conduit.

3

19.     On July 10, 2015, Plaintiffs filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Middle District of Florida, Case No. 15-06019 (the "Bankruptcy Case"). A copy of the docket sheet for the Bankruptcy Case is attached as **Exhibit 2**.

20.     On November 11, 2015, prior servicer Selene Finance, LP ("Selene") filed Proof of Claim No. 8-1 in the Bankruptcy Case, wherein Selene asserted a pre-petition mortgage arrearage of $163,312.53. A copy of Proof of Claim No. 8-1 (without supporting attachments) is attached as **Exhibit 3**.

21.     On May 19, 2016, Selene and Plaintiffs entered into a Home Affordable Modification Agreement (the "Modification") to cure the previous delinquency on the Loan effective May 1, 2016. A copy of the Modification is attached as **Exhibit 4**.

22.     According to the Modification, Plaintiffs were to begin making regular monthly mortgage payments in the amount of $1,721.46 plus an estimated $701.69 for escrow items, for a total of approximately $2,423.15. See Exhibit 4.

23.     From May 2016 to present, Plaintiffs have made every monthly mortgage payment due to their mortgage servicers.

24.     On October 26, 2016, Selene filed an amended proof of claim, Proof of Claim No. 8-2, in the Bankruptcy Case, wherein Selene asserted a pre-petition mortgage arrearage of $0.00. A copy of Proof of Claim No. 8-2 (without supporting attachments) is attached as **Exhibit 5**.

25.     On June 24, 2016, Plaintiffs filed a motion for approval of the Modification and, on September 23, 2016, the Bankruptcy Court granted Plaintiffs' motion. See Exhibit 2.

26.     On January 10, 2018, Selene filed a Notice of Payment Change in the Bankruptcy Case, indicating that Plaintiffs' monthly payment would be $2,349.16, with an escrow payment of

$627.70, effective February 1, 2018. A copy of the Notice of Payment Change (without supporting attachments) is attached as **Exhibit 6**.

27.     On August 11, 2018, Selene filed a Transfer of Claim in the Bankruptcy Case, transferring its claim to Headlands Residential 2018-RPL1 Grantor Trust c/o SN Servicing ("Headlands"). See Exhibit 2.

28.     On December 27, 2018, Plaintiffs' property insurance carrier, Chubb Limited ("Chubb"), sent Plaintiffs a Payment Reminder claiming that their homeowner's insurance premium had not been paid and would be cancelled unless payment of $3,308.00 was received by January 9, 2019. A copy of the Payment Reminder is attached as **Exhibit 7**.

29.     Plaintiffs, out of an abundance of caution and in fear that their homeowner's insurance policy would lapse, paid the premium directly to Chubb upon receipt of the notice. On January 15, 2019, Chubb sent Plaintiffs a Receipt of Past Due Payment wherein Chubb confirmed receipt of the payment and stated that there was no lapse in coverage and the homeowner's insurance policy was active. A copy of the Receipt of Past Due Payment is attached as **Exhibit 8**.

30.     On January 10, 2019, SN Servicing, on behalf of Headlands, filed a Notice of Payment Change in the Bankruptcy Case, indicating that Plaintiffs' monthly payment would be $3,313.84, with an escrow payment of $1,592.38, effective February 1, 2019. A copy of the Notice of Payment Change is attached as **Exhibit 9**.

31.     Through the Annual Escrow Account Disclosure Statement attached to the Notice of Payment Change, SN Servicing claims that it made a disbursement of $3,268.62 in September 2018 which, upon information and belief, was to go towards the Chubb insurance policy. Despite claiming that it disbursed money to pay Chubb in September 2018, SN Servicing indicated that it anticipated disbursements of $1,224.69 every month for, upon information and belief, a separate

property insurance policy. This difference between the two policies is approximately $11,427.66. As of January 10, 2019, SN Servicing had made five disbursements for the force placed insurance policy in the amount of $6,116.14. See Exhibit 9.

32.     On January 28, 2019, Plaintiffs filed an objection to the January 10, 2019 Notice of Payment Change, explaining to the Bankruptcy Court the issue with the Chubb insurance policy and SN Servicing's improper purchase of an exorbitant force placed insurance policy. Plaintiffs demanded a refund of the $3,308.00 that they had to pay Chubb and a full accounting and explanation of where the September 2018 disbursement of $3,268.62 went. A copy of the objection is attached as **Exhibit 10**.

33.     On February 25, 2019, SN Servicing, on behalf of Headlands, filed a Transfer of Claim in the Bankruptcy Case, transferring its claim to Metropolitan c/o Shellpoint. See Exhibit 2.

34.     On April 16, 2019, Shellpoint, on behalf of Metropolitan, filed a Notice of Withdrawal of the January 10, 2019 Notice of Payment Change in the Bankruptcy Case, wherein it claimed that "the loan has been reconciled to correct the escrow." A copy of the Notice of Withdrawal is attached as **Exhibit 11**.

35.     On April 17, 2019, the Bankruptcy Court entered an Order Directing Accounting and Mediation, directing Metropolitan and Headlands (the "Creditors") to provide an accounting relating to the disbursement of funds to Plaintiffs and the Chapter 13 Trustee within twenty-one (21) days. A copy of the Order is attached as **Exhibit 12**.

36.     The Creditors, and their servicers SN Servicing and Shellpoint, failed to provide Plaintiffs with an accounting within twenty-one (21) days as directed by the Bankruptcy Court. On May 24, 2019, Plaintiffs filed a Motion to Compel to request the Bankruptcy Court to compel

the Creditors to comply with the April 17, 2019 order. A copy of the Motion to Compel is attached as **Exhibit 13**.

37.     On July 11, 2019, the Bankruptcy Court granted Plaintiffs' Motion to Compel and required the Creditors to issue a refund of $3,300.00 to Plaintiffs. A copy of the Order is attached as **Exhibit 14**.

38.     On July 26, 2019, Shellpoint sent a monthly mortgage statement to Plaintiffs wherein it claimed that Plaintiffs were $3,792.21 past due, indicating that it had not corrected the issues with the Loan. The mortgage statement states that Plaintiffs owe $250.00 for "Add'l Hearings Disbursement" and have paid $193.65 towards fees and/or late charges in 2019. A copy of the mortgage statement is attached as **Exhibit 15**.

39.     On August 18, 2019, Shellpoint sent another monthly mortgage statement to Plaintiffs wherein it claimed that Plaintiffs were $3,373.03 past due. A copy of the mortgage statement is attached as **Exhibit 16**.

40.     On February 27, 2020, Shellpoint sent a Notice of Default and Intent to Accelerate to Plaintiffs wherein it claimed that Plaintiffs were $2,619.60 past due. A copy of the Notice of Default and Intent to Accelerate is attached as **Exhibit 17**.

41.     On March 3, 2020, Plaintiffs filed a Motion to Declare Current and Reinstated in the Bankruptcy Case. A copy of the Motion to Declare Current and Reinstated is attached as **Exhibit 18**.

42.     According to the Motion to Declare Current and Reinstated, Plaintiffs were to begin submitting direct monthly mortgage payments to Shellpoint in the amount of $2,349.16 starting April 1, 2020. See Exhibit 18.

43.     Shellpoint, on behalf of Metropolitan, failed to respond to the Motion to Declare Current and Reinstated. See Exhibit 2.

### PLAINTIFFS' ATTEMPTS TO CORRECT THE ERRORS WITH THE LOAN

44.     On February 7, 2020, Plaintiffs, through counsel, sent the following pieces of correspondence, both classified as a request for information pursuant to 12 C.F.R. § 1024.36 (the "RFIs"), to Shellpoint at the address designated by Shellpoint for receipt of requests for information pursuant to 12 C.F.R. § 1024.36(b) and notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") via Certified Mail.

    a.  Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking information concerning the Loan, including a transaction history of the Loan, among other items [Tracking No. 7014 2120 0003 0672 7587] ("RFI #1"); and

    b.  Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 Including a Request for a Payoff Statement Pursuant to 12 C.F.R. § 1026.36(c)(3)" seeking information concerning the current servicer, master servicer, and owner of the Loan and requesting a payoff statement [Tracking No. 7014 2120 0003 0672 7570] ("RFI #2").

Copies of the RFIs (without supporting enclosures) and tracking information evidencing delivery of the RFIs from the website for the USPS (www.usps.com) are attached as **Exhibit 19** and **Exhibit 20**, respectively.

45.     Shellpoint received the RFIs at the Designated Address on February 18, 2020. See Exhibits 19-20.

46.    From February 18, 2020 until February 25, 2020, upon information and belief, Shellpoint failed to send any correspondence in acknowledgment of receipt of the RFIs.

47.    From February 18, 2020 until March 19, 2020, upon information and belief, Shellpoint failed to send any correspondence in response to the RFIs.

48.    Shellpoint did however send correspondence in acknowledgment of receipt of the RFIs and in response to a portion of RFI #2 on three separate occasions on March 20, 2020, April 20, 2020, and May 8, 2020. A copy of the March 20, 2020, April 20, 2020, and May 8, 2020 correspondences are attached as **Exhibit 21**.

49.    Shellpoint's March 20, 2020 response to RFI #2 was untimely, as Shellpoint was required to provide that information to Plaintiffs by March 3, 2020. See Exhibit 21.

50.    On March 31, 2020, Shellpoint sent Plaintiffs a payoff statement in response to RFI #2. A copy of the payoff statement is attached as **Exhibit 22**.

51.    Shellpoint's March 31, 2020 response to RFI #2 was untimely, as Shellpoint was required to provide that information to Plaintiffs by February 27, 2020. See Exhibit 22.

52.    From February 18, 2020 until April 6, 2020, upon information and belief, Shellpoint failed to send any correspondence in response to RFI #1.

53.    On April 7, 2020, Shellpoint sent Plaintiffs an incomplete response to RFI #1 (the "Response to RFI #1"). Despite spanning 435 pages, the Response to RFI #1 did not provide a complete transaction history for the Loan and in fact provided no documents from SN Servicing at all, despite Shellpoint having in its file documents from Selene, the servicer prior to SN

Servicing. A copy of the Response to RFI #1 (without supporting enclosures)[1] is attached as **Exhibit 23**.

54.    Shellpoint's April 7, 2020 response to RFI #1 was untimely, as Shellpoint was required to provide that information to Plaintiffs by March 31, 2020. See Exhibit 23.

55.    On April 8, 2020, Shellpoint sent Plaintiffs an untimely notice requesting a fifteen (15) day extension of time to respond to RFI #1 pursuant to 12 C.F.R. § 1024.36(d)(2)(ii). A copy of the notice of extension is attached as **Exhibit 24**.

56.    If Shellpoint had sent the notice of extension before the statutory response period had lapsed, it would have been required to send a response to the RFIs by April 21, 2020.

57.    To date, Shellpoint has failed to provide the remainder of the information requested by RFI #1.

58.    Sometime in early 2020, Plaintiffs submitted a complaint through the "Contact Us" link on Shellpoint's website. A copy of the complaint is attached as **Exhibit 25**.

59.    On April 9, 2020, Shellpoint sent a response to Plaintiffs' website complaint wherein it stated that it:

    a.    Improperly assessed a late charge on March 17, 2020;

    b.    Reversed all payments to waive said late charge;

    c.    Reapplied $9,192.50 to the Loan that was previously misapplied;

    d.    Waived a late fee of $51.64;

    e.    Applied the payment received on March 30, 2020 to April 1, 2020; and,

    f.    Deemed Plaintiffs to be current and the Loan due for May 1, 2020.

---

[1] Plaintiffs are not attaching the entire 435 page document as an exhibit to the Complaint because of the time that would be required to redact confidential information that appears throughout the document.

A copy of the April 9, 2020 response is attached as **Exhibit 26**.

60.     On May 1, 2020, Plaintiffs, through counsel, sent a notice of error (the "NOE") to Shellpoint at the Designated Address via Certified Mail [Tracking No. 7015 1520 0001 6635 5669]. A copy of the NOE (without supporting enclosures) and tracking information evidencing delivery of the NOE from the USPS's website is attached as **Exhibit 27**.

61.     Through the NOE, Plaintiffs asserted that Shellpoint failed to provide an exact reproduction of the life of loan mortgage transaction history for the times that SN Servicing serviced the Loan and copies of servicing notes relating to Shellpoint's servicing of the Loan. See Exhibit 27.

62.     Additionally, Plaintiffs asserted that SN Servicing misappropriated $9,384.76 of Plaintiffs' payments and that Shellpoint has benefitted, directly, or indirectly through the assignment of servicing rights, from the misappropriation. See Exhibit 27.

63.     Shellpoint received the NOE at the Designated Address on May 7, 2020. See Exhibits 27.

64.     From May 7, 2020 until May 25, 2020, upon information and belief, Shellpoint failed to send any correspondence in acknowledgment of receipt of the NOE.

65.     On May 26, 2020, Shellpoint sent Plaintiffs a notice requesting a fifteen (15) day extension of time to respond to the NOE pursuant to 12 C.F.R. § 1024.35(e)(3)(ii). A copy of the notice of extension is attached as **Exhibit 28**.

66.     To date, Shellpoint has failed to provide Plaintiffs or their attorneys with any response to the NOE.

## IMPACT AND DAMAGE TO PLAINTIFFS

67.     SN Servicing's improper actions have directly and proximately caused Plaintiffs to suffer damages, including:

      a.   Improper fees and charges, of at least $193.65, imposed on the Loan due to SN Servicing's failure to pay for the Chubb policy, unreasonable purchase of force placed insurance, and failure to properly correct the accounting on the Loan;

      b.   Legal fees and expenses to submit requests for information and notices of error to Shellpoint in an attempt obtain information and seek Shellpoint's compliance with the terms of state and federal law and regulations, as well as mortgage servicing guidelines, which would not have been necessary if SN Servicing properly corrected the accounting on the Loan and followed the Bankruptcy Court's order to provide an accounting on the Loan; and,

      c.   Severe emotional distress caused by SN Servicing's failure to correct the accounting on the Loan, follow the Bankruptcy Court's order to provide an accounting on the Loan, and transfer accurate recordings to Shellpoint which resulted in Shellpoint threatening to foreclose on Plaintiffs' home. As a result of SN Servicing's actions, Plaintiffs have suffered frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

68.     If SN Servicing had timely paid the Chubb policy, refrained from purchasing force placed insurance, provided an accounting of the Loan when required by the Bankruptcy Court, and transferred accurate records to Shellpoint, the additional damages incurred by Plaintiffs could have been eliminated or mitigated.

69.     Shellpoint's improper actions have directly and proximately caused Plaintiffs to suffer damages, including:

a.   Improper fees and charges, of at least $193.65, imposed on the Loan due to Shellpoint's failure to properly correct the accounting on the Loan;

b.   Legal fees and expenses to submit requests for information and notices of error to Shellpoint in an attempt obtain information and seek Shellpoint's compliance with the terms of state and federal law and regulations, as well as mortgage servicing guidelines; and,

c.   Severe emotional distress caused by Shellpoint's failure to correct the accounting on the Loan and Shellpoint's refusal to properly handle the error resolution processes related to the Loan. As a result of Shellpoint's actions, Plaintiffs have suffered frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

70.   If Shellpoint had properly responded to RFI #1 and provided the information requested by Plaintiffs, properly responded to the NOE, and corrected the errors asserted by the NOE, the additional damages incurred by Plaintiffs could have been eliminated or mitigated, but Shellpoint has failed to make things right.

71.   Throughout this entire ordeal, Plaintiffs have simply wanted to successfully complete the Bankruptcy Case without any issues and make their monthly payments pursuant to the Modification in order to begin to rehabilitate their credit, and most importantly, remain in the Home without fear of foreclosure.

## PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY SHELLPOINT

72.   Shellpoint's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and in abdication and contravention of Shellpoint's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA. Specifically, as discussed,

*infra*, Shellpoint has violated 12 C.F.R. § 1024.35 at least twice (failure to timely acknowledge the NOE and failure to timely and properly respond to the NOE) and 12 C.F.R. § 1024.36 at least four times (failures to timely acknowledge both RFIs, failure to timely respond to RFI #2, and failure to timely and properly respond to RFI #1).

73.     At the time of the filing of this Complaint, Shellpoint has had Five Hundred Eighty-Four (584) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

74.     At the time of the filing of this Complaint, Shellpoint has had Four Hundred Seventy-Nine (479) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

75.     Plaintiffs have reviewed the CFPB's consumer complaint database and have identified other similar alleged RESPA violations by Shellpoint against other borrowers. In particular, Plaintiff has reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 29**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Shellpoint has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

### COUNT ONE: AGAINST SHELLPOINT
### VIOLATIONS OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)

**(Failure to timely and properly respond to a request for information)**

76.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 75, in their entirety, as if fully rewritten.

77.     12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

78.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

79.     12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

[A] servicer must respond to an information request by either:

(i)     Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii)    Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

80.     Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A)     Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

      (B)   For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

81.    "A servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

82.    RFI #1 meet the definition of a request for information as defined by 12 C.F.R. § 1024.36(a) because both contain Plaintiffs' names, loan number, property address, and requests information related to the Loan. See Exhibit 19.

83.    Plaintiffs sent RFI #1 to Shellpoint at the Designated Address and Shellpoint received the same at the Designated Address. See Exhibit 19.

84.    Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), Shellpoint was required to provide written correspondence to Plaintiffs in response to RFI #1 "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays)" after Shellpoint received RFI #1 in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1).

85.    Shellpoint failed to properly respond to RFI #1 as required by 12 C.F.R. § 1024.36(d)(1) within the applicable statutory deadlines contained in 12 C.F.R. § 1024.36(d)(2)(i).

86.    The Response to RFI #1 is incomplete as it did not provide a complete transaction history for the Loan and in fact provided no documents from SN Servicing at all, despite Shellpoint having in its file documents from Selene, the servicer prior to SN Servicing. See Exhibit 23.

87.    Shellpoint's failures to respond to RFI #1 constitute clear, separate, and distinct violations of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E).

88.     Shellpoint's actions caused Plaintiffs to suffer actual damages, including, but not limited to, attorneys' fees incurred for the time in preparing RFI #1 and the NOE, postage costs for mailing RFI #1 and the NOE, and extreme emotional distress. See ¶ 69.

89.     Shellpoint's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights. See ¶¶ 72-75.

90.     As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

91.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO
## VIOLATIONS OF RESPA, 12 C.F.R. § 1024.35(e) AND 12 U.S.C. § 2605(k)

**(Failure to perform reasonable investigations into the errors asserted by notices of error)**

92.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 75, in their entirety, as if fully rewritten.

93.     12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

94.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

95.     12 C.F.R. § 1024.35(e)(1) provides:

(i)     **In general.** Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

(ii) **Different or additional error.** If during a reasonable investigation of a notice of error, a servicer concludes that errors occurred other than, or in addition to, the error or errors alleged by the borrower, the servicer shall correct all such additional errors and provide the borrower with a written notification that describes the errors the servicer identified, the action taken to correct the errors, the effective date of the correction, and contact information, including a telephone number, for further assistance.

96.    12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not … fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

97.    Standard servicer duties are those "typically undertaken by servicers in the ordinary course of business." 78 Fed. Reg. 10696, 10739.

98.    12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

99.     The NOE meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a) because it contains Plaintiffs' names, loan number, property address, and states the errors Plaintiffs believe to have occurred. See Exhibit 27.

100.    Through the NOE, Plaintiffs alleged that Shellpoint committed no less than two (2) covered errors, including errors pursuant to:

   a.   12 C.F.R. § 1024.35(b)(11) for failing to properly respond to RFI #1;

   b.   12 C.F.R. § 1024.35(b)(11) for failure to properly maintain Plaintiffs' escrow account

See Exhibit 27.

101.    Plaintiffs sent the NOE to Shellpoint at the Designated Address and Shellpoint received the same at the Designated Address. See Exhibit 27.

102.    Shellpoint failed to provide Plaintiffs with any response to the NOE, which indicates that Shellpoint did not perform a reasonable investigation into the errors asserted by the NOE.

103.    Shellpoint's failure to respond to, correct, or properly investigate the errors alleged through the NOE constitutes numerous distinct violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

104.    Shellpoint's actions caused Plaintiffs to suffer actual damages, including, but not limited to, attorneys' fees incurred for the time in preparing RFI #1 and the NOE, postage costs for mailing RFI #1 and the NOE, and extreme emotional distress. See ¶ 69.

105.    Shellpoint's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights. See ¶¶ 72-75.

106.    As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

107.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT THREE: AGAINST SN SERVICING
### VIOLATIONS OF RESPA, 12 U.S.C. §§ 2605(g) and 2605(k)(1)(E) and 12 C.F.R. §§ 1024.17(k) and 1024.34(a)

#### (Failure to timely make payments for insurance premiums)

108.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 75, in their entirety, as if fully rewritten.

109.    12 U.S.C. § 2605(g) provides:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

*See also* 12 C.F.R. § 1024.17(k)(1); 12 C.F.R. § 1024.34(a).

110.    12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

111.    The Loan included an escrow account and Plaintiffs were current on their mortgage payments as of September 24, 2018.

112.    On September 24, 2018, SN Servicing failed to pay the Chubb insurance policy and Plaintiffs were forced to pay Chubb directly in January 2019. <u>See Exhibits 7-8</u>.

113.    Due to this error, SN Servicing purchased exorbitant force placed insurance and created errors with the accounting of the Loan that Plaintiffs are still trying to correct nearly two years later.

114.    Upon information and belief, as SN Servicing failed to comply with the Bankruptcy Court's order and Shellpoint refuses to provide a transaction history for the time SN Servicing was the servicer of the Loan, SN Servicing assessed improper fees and charges to the Loan as a result of failing to pay for the Chubb insurance policy, resulting in errors in the accounting of the Loan.

115.    SN Servicing's failure to timely pay the Chubb insurance policy constitutes a distinct violation of 12 U.S.C. §§ 2605(g) and 2605(k)(1)(E) and 12 C.F.R. §§ 1024.17(k) and 1024.34(a).

116.    SN Servicing's actions caused Plaintiffs to suffer actual damages, including, but not limited to, improper fees and charges being assessed to the Loan, attorneys' fees incurred for the time in preparing the RFIs and the NOE, postage costs for mailing the RFIs and the NOE, and extreme emotional distress. See ¶ 67.

117.    As a result of SN Servicing's actions, SN Servicing is liable to Plaintiffs for actual damages. 12 U.S.C. § 2605(f)(1).

118.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT FOUR: AGAINST SN SERVICING
### VIOLATIONS OF RESPA, 12 U.S.C. §§ 2605(k)(1)(A), 2605(l)(3)(B), 2605(m), and 2607(a), 12 C.F.R. §§ 1024.14(b) and 1024.37(b)

**(Purchase of force placed insurance that is not bona fide and reasonable and failure to refund)**

119.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 75, in their entirety, as if fully rewritten.

120.    12 C.F.R. § 1024.37(a)(1) defines "force-placed insurance" as "hazard insurance obtained by a servicer on behalf of the owner or assignee of a mortgage loan that insures the property securing such loan."

121.    12 U.S.C. § 2605(m) states, "All charges … related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable." *See also* 12 C.F.R. § 1024.37(b) ("A servicer may not assess on a borrower a premium charge or fee related to force-placed insurance unless the servicer has a reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance.").

122.    Comment 2 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(b)(5), entitled "Unreasonable basis", declares that "a servicer lacks a reasonable basis to impose fees that are not bona fide, such as … (iv.) A charge for force-placed insurance in a circumstance not permitted by § 1024.37."

123.    12 U.S.C. § 2605(l)(3)(B) requires a servicer to "refund to the consumer all force-placed insurance premiums paid by the borrower during any period during which the borrower's insurance coverage and the force-placed insurance coverage were each in effect, and any related fees charged to the consumer's account with respect to the force-placed insurance during such period."

124.    12 U.S.C. § 2605(k)(1)(A) provides that "[a] servicer of a federally related mortgage shall not … obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance."

125.    12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

126.    SN Servicing lacked a bona fide and reasonable basis to believe that Plaintiffs failed to comply with the Loan's requirement to maintain property insurance because SN Servicing was the party responsible for paying the premiums for the Chubb insurance policy.

127.    SN Servicing lacked a bona fide and reasonable basis to disburse the five force payments for force placed insurance in the amount of $6,116.14 because SN Servicing failed to pay the premiums for the Chubb insurance policy.

128.    The $11,427.66 difference between the two insurance policies represents SN Servicing's acceptance of improper fees, kickbacks, or things of value as prohibited by 12 U.S.C. § 2607(a) and 12 C.F.R. § 1024.14(b).

129.    Upon information and belief, as SN Servicing failed to comply with the Bankruptcy Court's order and Shellpoint refuses to provide a transaction history for the time SN Servicing was the servicer of the Loan, SN Servicing assessed improper fees and charges to the Loan as a result of purchasing force placed insurance, resulting in errors in the accounting of the Loan.

130.    SN Servicing's actions in purchasing force placed insurance without a bona fide and reasonable basis, disbursing five payments to pay for said policy, and failing to refund Plaintiffs for the improper fees and charges related to the force placed insurance constitute distinct violations of numerous subsections of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.37(b).

131.    SN Servicing's actions caused Plaintiffs to suffer actual damages, including, but not limited to, improper fees and charges being assessed to the Loan, attorneys' fees incurred for

the time in preparing the RFIs and the NOE, postage costs for mailing the RFIs and the NOE, and extreme emotional distress. See ¶ 67.

132.     As a result of SN Servicing's actions, SN Servicing is liable to Plaintiffs for actual damages. 12 U.S.C. § 2605(f)(1).

133.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

134.     SN Servicing's acceptance of improper fees, kickbacks, or things of value constitute distinct violations of 12 U.S.C. § 2607(a) and 12 C.F.R. § 1024.14(b).

135.     SN Servicing's actions caused Plaintiffs to suffer actual damages, including, but not limited to, improper fees and charges being assessed to the Loan, attorneys' fees incurred for the time in preparing the RFIs and the NOE, postage costs for mailing the RFIs and the NOE, and extreme emotional distress. See ¶ 67.

136.     As a result of SN Servicing's actions, SN Servicing is liable to Plaintiffs for actual damages and treble damages. 12 U.S.C. § 2607(d)(2).

137.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2607(d)(5).

## COUNT FIVE: AGAINST SN SERVICING
### BREACH OF CONTRACT

138.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 75, in their entirety, as if fully rewritten.

139.     The Modification is an enforceable contract between SN Servicing, as assignee, and Plaintiffs. See ¶ 21 and Exhibit 4.

140.    SN Servicing breached the Modification by failing to honor its terms, specifically by failing to pay for the Chubb insurance policy and improperly purchasing force placed insurance. See Exhibits 7-9.

141.    Plaintiffs have fully performed their obligations pursuant to the Modification by making a mortgage payment every month.

142.    SN Servicing's breach is one of bad faith as demonstrated by its failure to comply with the order of the Bankruptcy Court for an accounting of the Loan. See Exhibits 12-14.

143.    SN Servicing owed Plaintiffs an implied duty of good faith to handle the payments made by Plaintiffs properly and in accordance with the Loan.

144.    SN Servicing's actions caused Plaintiffs to suffer actual damages, including, but not limited to, improper fees and charges being assessed to the Loan, attorneys' fees incurred for the time in preparing the RFIs and the NOE, postage costs for mailing the RFIs and the NOE, and extreme emotional distress. See ¶ 67.

145.    As a result of SN Servicing's actions, SN Servicing is liable to Plaintiffs for actual damages and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Lawrence E. Blackhurst and Carol A. Blackhurst pray that this Court enter its order granting judgment against Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing and SN Servicing Corporation for the following:

A.    Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Five against all Defendants;

B.    Statutory damages of Two Thousand Dollars ($2,000.00) per each violation contained in Counts One and Two against Shellpoint;

C.    Treble damages for the allegations contained in Count Four against SN Servicing;

D.      Costs and reasonable attorneys' fees as to all Counts against all Defendants; and,

E.      Such other relief which this Court may deem appropriate.

DATED: August 20, 2020                Respectfully submitted,

                                      /s/ K. Hunter Goff
                                      K. Hunter Goff (Florida Bar No. 0240930)
                                      **LAW OFFICE OF K. HUNTER GOFF, PA**
                                      600 N. U.S. Hwy. 27, Ste. 6
                                      Minneola, FL 34715
                                      Telephone: 407-898-8225
                                      Facsimile: 407-898-8226
                                      hunter@khgpa.com

                                      Marc E. Dann (Ohio Bar No. 0039425)
                                      (*pro hac vice anticipated*)
                                      Brian D. Flick (Ohio Bar No. 0081605)
                                      (*pro hac vice anticipated*)
                                      **DANN LAW**
                                      P.O. Box 6031040
                                      Cleveland, OH 44103
                                      Telephone: 216-373-0539
                                      Facsimile: 216-373-0536
                                      notices@dannlaw.com
                                      *Counsel for Plaintiffs Lawrence E. Blackhurst, Jr.*
                                      *and Carol A. Blackhurst*

**JURY DEMAND**

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ K. Hunter Goff
K. Hunter Goff (Florida Bar No. 0240930)
**LAW OFFICE OF K. HUNTER GOFF, PA**

*Counsel for Plaintiffs Lawrence E. Blackhurst, Jr. and Carol A. Blackhurst*